**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

DOUGLAS CASTILLO ALBERTO,

   Petitioner,

  v.

JOHN MATTOS, *et al.*,

   Respondents.

Case No. 2:26-cv-01441-RFB-BNW

**ORDER GRANTING WRIT OF HABEAS CORPUS AND DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**

Before the Court is Petitioner Douglas Castillo Alberto's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See generally First Amended Petition, ECF No. 8 [hereinafter, "Petition" or "Am. Pet."]. He also moves for a temporary restraining order directing his immediate release due to health issues—possible liver-cancer recurrence. See Motion for Temporary Restraining Order, ECF No. 9 [hereinafter, "TRO"]. For the following reasons, the Court grants the Petition and denies the TRO without prejudice as moot.

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Federal Respondents (also referred to herein as "the government") are detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") that generally[1] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings. See generally Federal Respondents' Response to

---

[1] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at \*8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

First Amended Petition and Motion for Temporary Restraining Order, ECF No. 13 [hereinafter, "Return"].[2] Petitioner asserts that his detention under § 1225(b)(2)(A) violates the INA and the Due Process Clause of the Fifth Amendment, because he is properly detained under § 1226(a), and his arrest and detention without required procedures violates his right to due process. See Am. Pet. at 5–8.

The government invokes its novel statutory interpretation of § 1225(b)(2)(A) as the basis for Petitioner's detention. See generally Return. The government does not assert any individualized justification but insists Petitioner's detention is mandated by statute regardless of his individual circumstances. See id. On March 30, 2026, the Court issued a classwide judgment declaring the government's interpretation of § 1225(b)(2)(A) unlawful under the INA, because undocumented noncitizens like Petitioner, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under § 1226(a) and its implementing regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *33 (D. Nev. Mar. 30, 2026). Pursuant to § 706(2)(A) of the Administrative Procedures Act ("APA"), the Court further vacated the government's mass immigration detention policies under § 1225(b)(2)(A), which were encapsulated in an internal ICE Memo and the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter, Hurtado]. See id.

As discussed below—and as the government concedes—the Court finds that Petitioner is a member of the Jacobo-Ramirez Class. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Further, the Court finds Petitioner's arrest and ongoing detention without the procedural protections provided under § 1226(a) violates his constitutional right to due process. Finally, the Court finds the appropriate remedy in this case is Petitioner's immediate release from custody, a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A), and an order requiring the

---

[2] John Mattos, Warden of the Nevada Southern Detention Center, filed a Response to Petitioner's First Amended Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order, ECF No. 12 [hereinafter, "Mattos Return"], asserting that Mattos "had (and has) no involvement in Petitioner's immigration proceedings and no independent authority to release Petitioner[,]" and thus takes no position on the Petition's merits. See generally, Mattos Return.

government to follow appropriate procedures in the event they seek to re-detain Petitioner under § 1226(a).

## I.    CLASS MEMBERSHIP

The Court begins with whether Petitioner is a member of the Jacobo-Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, 2026 WL 879799, at *4 [hereinafter, "Class Members"]. The government concedes Petitioner is a Class Member but argues that his Petition is moot because he is already scheduled for a bond hearing and thus will receive what he seeks in this case. See Return at 1–2, ECF No. 13. Based on the undisputed verified factual allegations in the Petition, and the documentary evidence supplied by the parties, the Court finds that Petitioner satisfies the criteria for Jacobo-Ramirez Class Membership. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). The Court also finds that Federal Respondents' mootness argument is unsupported and lacks merit.

First, Petitioner is an undocumented noncitizen who was arrested and detained by ICE on or around April 8, 2026, and he remains detained. See Am. Pet. at 4, ECF No. 8. Second, he is in removal proceedings before the Las Vegas Immigration Court, which is within the District of Nevada. See Status Report at 2, ECF No. 20. Third, the Department of Homeland Security ("DHS") alleges that Petitioner entered the United States without inspection, admission, or parole. See Federal Respondents' Notice of Class Membership [hereinafter, "Notice"], Ex. A at 3 (DHS Form I-213 Record of Inadmissible Noncitizen), ECF No. 7-1 [hereinafter, "I-213"]; id., Ex. B at 5 (DHS Form I-862 Notice to Appear) [hereinafter, "NTA"] (Alleging Petitioner is "an alien present in the United States who has not been admitted or paroled."). Fourth, Federal Respondents

are detaining Petitioner under § 1225(b)(2)(A) and they do not assert that he is or will be subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally, Return, ECF No. 13. Fifth, Petitioner was most recently arrested well within the country's interior, not while he was arriving in the United States. See Am. Pet. at 4; Notice at 3 (I-213).

Finally, as to mootness, "the fundamentals of standing are well-known and firmly rooted in American constitutional law." Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC, 158 F.4th 1052, 1057 (9th Cir. 2025) (citation modified) (quoting FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024)). "Most basic among those principles is that a case or controversy must include (1) an injury-in-fact, (2) caused by the defendant's acts, (3) that likely would be redressed by the requested judicial relief." Id. (citation modified). "These conditions 'must remain extant at all stages of review, not merely at the time the complaint is filed.'" Id. (citation modified) (quoting Decker v. Nw. Env't Def. Ctr., 568 U.S. 597, 609 (2013)). "But "the burden of demonstrating mootness is a heavy one." Williams v. INS, 795 F.2d 738, 741 (9th Cir. 1986) (citation modified).

Federal Respondents argue without authority or analysis that the Petition is moot because Petitioner "will be obtaining the relief he requested" as he's been scheduled for a bond hearing. Return at 2. Respondents have failed to carry their heavy burden of demonstrating mootness. First, their bare conclusion that this action is moot, unsupported by a memorandum of points and authorities, constitutes a consent to the granting of the Petition. See Local Rule 7-2(d).

Second, it is possible for the Court to grant this Petitioner effectual relief. See Coastal Env't Rts. Found., 158 F.4th at 1057 ("Regarding redressability, "when it is impossible for a court to grant any effectual relief whatever to the prevailing party[,]" there is nothing left for the court to do and the "case becomes moot.") (citation modified) (quoting Decker, 568 U.S. at 609). Petitioner is no longer scheduled for a bond hearing. The hearing was initially scheduled for June 3, 2026, Return, Ex. A at 2, ECF No. 13-1, but it was later vacated by the immigration judge and Petitioner's bond hearing request was deemed withdrawn subject to his ability to submit a new request so that his immigration attorney could appear on his behalf. Status Report at 2, ECF No. 20.

Third, the mere scheduling of a bond hearing does not obviate the Court's need to resolve

this Petition and bring an end to the parties' controversy. Actual receipt of all the relief to which the petitioner is entitled is the *sine qua non* of mootness, not the opponent's voluntary agreement to provide some relief. See Chen v. Allstate Ins. Co., 819 F.3d 1136, 1145 (9th Cir. 2016) (collecting cases). To be sure, this Petitioner seeks more than the scheduling of a bond hearing. The remedies he asks for are "immediate release," or in the alternative, an order requiring that any bond hearing be held under § 1226 and its implementing regulations with the burden shifted to the government of demonstrating detention's necessity "by clear and convincing evidence[.]" Am. Pet. at 8–9. Without this Court's intervention, any bond hearing scheduled by the immigration court will place the burden on *Petitioner*, not the government, to establish that his detention is not necessary, consistent with BIA precedent. See Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006).

In sum, Petitioner is clearly a Jacobo-Ramirez Class Member entitled to enforcement of the declaratory judgment and vacatur afforded to the Class by this Court, and his Petition was not rendered moot when the government scheduled his requested bond hearing.

Federal Respondents are reminded that the declaratory judgment entered in favor of Jacobo-Ramirez Class Members has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201. In other words, "a declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As parties to Jacobo-Ramirez, Respondents are therefore obligated to comply with that judgment. See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

Respondents offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Petitioner, in violation of this Court's binding judgment. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*.") (citation modified); id. ("This form of relief conclusively resolves the legal rights of the parties.")

(citation modified). Thus, Petitioner was forced to seek enforcement of the Jacobo-Ramirez judgment through this habeas petition, and the Court must reiterate its finding that Petitioner's ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations. See Jacobo-Ramirez, 2026 WL 879799, at *33.

## II.   DUE PROCESS

The Court has previously clarified that Class Members and similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez v. Noem, 817 F. Supp. 3d. 1037, 1053–54 (D. Nev. 2025). The Court incorporates these holdings, and their underlying reasoning, in this case. The Court reiterates this country's longstanding, fundamental guarantee that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (emphasis added). Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." Yamataya v. Fisher, 189 U.S. 86, 100–01 (1903).

Section 1226(a) and its regulations guarantee noncitizens detained under that provision multiple levels of "substantial procedural protections" against the erroneous deprivation of their liberty. See Jacobo-Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)). These protections include, *inter alia*: the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without notice of the basis for their detention through a notice to appear, both of which must be signed and served by designated immigration officers, see id. (citing 8 C.F.R. §§ 236.1; 287.5(d); 287.8(c)(2)(i)-(ii));

the requirement that the arresting ICE officer conduct an initial custody determination at the outset of detention, wherein the noncitizen has an opportunity to "'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding,'" see id., (quoting Rodriguez Diaz, 53 4th at 1196) (citing 8 C.F.R. § 236.1(c)(8)); and the right to seek review of an ICE officer's initial custody determination through a prompt bond hearing before an immigration judge ("IJ") based on individualized evidence, wherein the IJ will order release on bond if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at 6–7 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19; Rodriguez Diaz, 53 F.4th at 1196 (citation modified)).

The government's novel mass-detention policies under § 1225(b)(2)(A) require no comparable procedures to ensure its detention authority respects constitutional limits. Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas, 533 U.S. at 690). As a result, noncitizens like Petitioner are indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without procedures to ensure the government considers—let alone substantiates—whether it has a constitutionally recognized interest in depriving the detainee of their liberty.

Indeed, ICE's § 1225(b)(2)(A) detention policy, as evidenced by the July 8th, 2025, Memo issued by then Acting ICE Director Todd Lyons, specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to noncitizens like Petitioner, because individual custody determinations are only required under § 1226 by regulation. See Jacobo-Ramirez, 2026 WL 879799, at *8 (citing 8 C.F.R. § 236.1(c)(8)). This Court vacated (i.e., set aside) that policy under the APA on March 30th, see id. at *33, yet as Petitioner's circumstances illustrate, the government is still detaining Class Members without any consideration of their dangerousness or risk of absconding from removal proceedings. But the government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the

community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity,' that is not what is going on here, where detention is mandatory regardless of these risks.") (quoting Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to apply to millions of undocumented noncitizens living in the United States, many of whom, like Petitioner, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," see Jacobo-Ramirez, 2006 WL 879799, at *2, raises serious constitutional concerns. See id. at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da Cunha, 175 F.4th at 94–96 (finding the government's interpretation raised due process concerns including that it "would likely subject" noncitizens "to unconstitutionally prolonged detention" "compounded by the fact that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings" and thus "lack the ability to reliably challenge their detention or the conditions in which they are being held."). These constitutional concerns are Petitioner's current reality.

As such, this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause. The procedural protections required under § 1226(a) encompass pre-deprivation notice of the individualized basis for ICE's decision to detain a noncitizen, "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker," Rodriguez Diaz, 53 F.4th at 1210. As illustrated below, Petitioner's arrest and detention without those protections violates his right to procedural due process. Likewise, the government's failure to articulate a constitutionally recognized interest in detaining Petitioner, including in these habeas proceedings, violates his right to substantive due process. See Zadvydas, 533 U.S. at 690.

///

## A. Procedural Due Process

To determine what process is due under the Constitution, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–1207 (collecting cases and finding the Mathews test appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation modified).

On balance, these factors weigh heavily in favor of Petitioner. First, Petitioner has a paramount interest in his physical liberty. That interest is especially weighty considering the process he has received, and that was available to him, upon his arrest and throughout his detention—that is, in terms of the government's custody determination, no process at all. See Rodriguez Diaz, 53 F.th at 1208 (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and the further process that was available to him in weighing his private liberty interest).

Second, the risk of an erroneous deprivation of liberty is extraordinarily high under the government's current procedures (or absence thereof), which do not require any individualized determination that Petitioner's detention serves its constitutionally recognized regulatory goals. Nor is Petitioner provided with timely notice and an opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA that apply to noncitizens (like Petitioner) who are arrested within the interior of the country and not while arriving[3] at its borders. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3

---

[3] ICE's arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE

(2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)" where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I.&N. Dec. 799 (BIA 1999)).

In contrast, longstanding procedures, which the government has only recently abandoned after thirty years of consistent prior practice, require an administrative warrant, a determination by ICE that Petitioner's detention is justified based on his individual circumstances, written notice of that determination, and a prompt opportunity to be heard by a neutral decisionmaker regarding ICE's determination, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate procedures significantly reduce the risk of erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who are dangerous, or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed a danger to the community or at risk of absconding. See Escobar Salgado, 809 F. Supp. 3d. at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation modified) (emphasis added).

**B. Substantive Due Process**

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959–60 (9th Cir. 2025). "Governmental

---

officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." See Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8, 2025, internal ICE Memo).

action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). Civil immigration detention violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (citation modified) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992); and Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

To date, the government has not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Thus, the Court finds that his detention violates substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates procedural and substantive due process and is, therefore, unconstitutional.

III.   REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to months of arbitrary detention in violation of his statutory and constitutional rights, as well as the Jacobo-Ramirez judgment. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (alterations in original) (citation modified). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

Despite being ordered to do so by this Court, Federal Respondents failed to produce a Form I-286 Initial Custody Determination as to Petitioner, or in the alternative, certify that such document is not in their possession, custody, or control. See Order Appointing Counsel at 2–3, ECF No. 4; Order to Show Cause, ECF No. 11. The Court finds the government's failure to produce evidence of an individualized pre-deprivation custody determination without so much as

an acknowledgement or explanation, in the face of the Court's Order, is a concession that no such record exists as to Petitioner, and he was not afforded procedures required by the INA and this Court's classwide judgment. See Jacobo-Ramirez, 2026 WL 879799, at *31. ("The Court issues a classwide declaratory judgment that Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

On that basis, the Court finds Petitioner's detention was void *ab initio*, as he was "detained . . . under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)." Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319 (E.D.N.Y. 2025) (ordering a noncitizen's release on this basis because "a bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue here" where the noncitizen's detention was unlawful from its inception). Federal Respondents cannot cure these violations by conducting a *post-hoc* bond hearing, as the initial custody determination requirement establishes a lawful basis for detention in the first instance. The Court will not bless Federal Respondents' "detain first, justify later" approach to Petitioner's liberty, which mangles § 1226(a)'s regulatory framework and due process.

The Court next considers Federal Respondents' continued enforcement of a detention policy that it found—in a binding judgment—to be unlawful and vacated. On March 30, 2026, this Court issued its declaratory judgment and vacated ICE's internal policy of not issuing initial custody determinations to noncitizens like Petitioner. See Jacobo-Ramirez, 2026 WL 879799, at *33. Although Petitioner was arrested a week after the Jacobo-Ramirez judgment was entered, he did not receive an initial custody determination; rather the government applied ICE's vacated internal policy to him and detained him without consideration of his dangerousness or flight risk. This means that in addition to being unlawful under the INA, Petitioner's detention was in defiance of the APA vacatur and Petitioner's adjudicated rights as a Class Member from the moment it

began. The government has since doubled down on its recalcitrance. Over two and a half months have passed since the Jacobo-Ramirez judgment, yet ICE still has not conducted a custody determination for Petitioner. Put simply, when faced with a binding judgment that (1) declared Petitioner's detention illegal and (2) vacated the agency policy underlying his arrest and detention, the government has taken no action to cure its unlawful conduct by providing him with an initial custody determination.

In fact, Federal Respondents have recently confirmed, in Jacobo-Ramirez, that they are not conducting initial custody determinations or issuing Form I-286 Notices to any Class Members, even though they acknowledge the declaratory judgment and vacatur entitles Class Members to those procedures. See Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 17:22–20:10, June 1, 2026, ECF No. 157. The Form I-286 Notice of Custody Determination is especially significant because it is served on the detainee at the outset of detention and includes the mechanism—a box the detainee may check—by which the detainee requests a custody redetermination hearing (*i.e.* bond hearing) before an IJ. See id. Importantly, by refusing to issue the I-286 Forms, Federal Respondents are depriving Class Members like Petitioner of the ability to immediately and efficiently request a prompt bond hearing. Federal Respondents have explained the only current mechanism for a Class Member to receive a bond hearing is by sending a written request to the Executive Office for Immigration Review ("EOIR") from the detention center via mail. See id. at 22:17–30:3. Class Members receive no instructions regarding how to do so. See id. This might explain why Petitioner was detained for nearly 8 weeks before his request for a bond hearing was received by EOIR.[4] Whereas if ICE had conducted an initial custody determination and served the Form I-286 Notice upon his arrest consistent with 8 C.F.R. § 236.1, Petitioner could have requested a bond hearing at the outset of his detention by simply checking a box.

Further, the fact that EOIR is holding a custody *redetermination* hearing without an *initial*

---

[4] Petitioner was detained on April 8, 2026, requested a prompt hearing before an IJ, and was not scheduled for an initial calendar hearing until about three weeks later, on April 27, 2026. See Notice, Ex. A at 5–7, ECF No. 7-1 (NTA). While detained, he managed to mail a *pro se* written request for a custody redetermination hearing on May 17, 2026, which was not received and filed by EOIR until May 26, 2026. See Return, Ex. A at 3–7, ECF No. 13-1 (Pet'r's Mot. for Custody Redetermination). He was initially scheduled for a June 3, 2026, bond hearing, but that was postponed until June 10, 2026, due to the unavailability of an IJ to hold the hearing. See Joint Status Report, ECF No. 17.

custody determination by ICE does not comply with the regulatory scheme, which delegates authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer. 8 C.F.R. § 236.1(d) (emphasis added). Thus, even where a bond hearing before an IJ is held, because ICE continues to enforce its vacated policy, that hearing does not comply with § 1226(a)'s regulations, or, by extension, the Court's declaratory judgment.

To date, the only justification for not complying with the Jacobo-Ramirez judgment provided by Federal Respondents is that "they need not comply with the declaratory judgment or vacatur because neither are coercive forms of relief." See Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Mins. of Proceedings, June 15, 2026, ECF No. 157. Federal Respondents do not contend that their continued enforcement of a policy vacated under the APA and disregard for Class Members' adjudicated rights is lawful. Instead, they take the position that, absent classwide coercive enforcement, the Court has no means by which to coerce their compliance with its judgment. Thus, in this, and countless other habeas matters filed by Jacobo-Ramirez Class Members, the government, which has yet to file an appeal in Jacobo-Ramirez, is disturbing the longstanding assumption that Executive Branch officials and departments will comply with a declaratory judgment unless and until it is stayed or vacated. See United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023).

More fundamentally, Federal Respondents are revolting against the separation of powers designed by the Framers, who "envisioned that the final 'interpretation of the laws' would be 'the proper and peculiar province of'" Article III Courts. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024) (quoting The Federalist No. 78, p. 535 (J. Cooke ed. 1961) (A. Hamilton)). By design the judicial branch exercises "'neither Force nor Will, but merely judgment' . . . independent of influence from the political branches." Id. (citation modified). Thus, that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings" is key to the Constitution's design. United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947).

Despite the government's open defiance of our constitutional order, it is true that a

declaratory judgment establishes Petitioner's rights but, standing alone, is not a self-executing command. See Steffel v. Thompson, 415 U.S. 452, 471 (1974) (explaining that a declaratory judgment "is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt."). Similarly, this Court's APA § 706 set aside (*i.e.* vacatur) "does not affect the Government's future actions" and "neither compels nor restrains further agency decision-making." Nat'l TPS All. v. Noem, 166 F.4th 739, 760 (9th Cir. 2026) (citation modified). Thus, in the absence of the threat of contempt, Federal Respondents have made clear that they will not conform their conduct to the Jacobo-Ramirez declaratory judgment and APA vacatur remedies voluntarily. The consequence is not that the lawfulness of Petitioner's detention is uncertain—this Court has already adjudicated it—but that Petitioner requires an appropriate remedy in this habeas proceeding, enforceable by the Court's contempt power, to give effect to his clearly established rights as a Class Member.

In fashioning this remedy, the Court also considers the fact that the government's disregard for its orders is not unique to the Jacobo-Ramirez judgment and the noncoercive nature of the relief afforded to Class Members. Federal Respondents have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters, apparently undeterred by the fact that those orders *are* backed by the Court's contempt power. These violations include, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners as ordered, disregarding deadlines, failing to provide constitutionally adequate bond hearings, and imposing unlawful release conditions. See Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[5]

---

[5] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. See, e.g., Sira v. Bondi, Case No. 2:26-CV-00828-RFB-DJA, ECF No. 8 (D. Nev. Apr. 21, 2026) (finding the government transferred petitioner out of the district in violation of court order and ordering return); Cortez Diaz v. Blanche, 2:26-CV-01056, ECF No. 10 (D. Nev. Apr. 29, 2026) (same); Yanes-Quijada v. Mattos, Case No. 2:26-CV-01221-RFB-NJK, ECF No. 16 (D. Nev. May 7, 2026) (finding the government failed to certify a lawful basis for a Class Member's detention in response to an order to show cause, failed to produce documents or certify they do not exist, etc., and ordering Petitioner's immediate release "given the egregious nature of his unjustified detention"); Garcia Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816 (D. Nev. May 9, 2026) (finding the petitioner remained in detention in violation of the Court's Order and equitably estopping ICE from taking fundamentally inconsistent positions in federal habeas proceedings

For all these reasons, the Court will not ratify the government's lawless conduct by ordering a bond hearing. While a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy for unlawful detention in some cases, under these circumstances the Court declines to keep Petitioner detained another moment. Ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications" and would inadequately remedy the harms suffered by Petitioner. Zheng v. Rokosky, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention."). Moreover, ordering a bond hearing would provide Federal Respondents yet another opportunity to violate this Court's Orders and due process.[6]

and immigration court); Cruz Perez v. Bondi, No. 2:26-CV-00316-RFB-DJA, ECF No. 31 (D. Nev. May 15, 2026) (finding the IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ, and ICE unilaterally imposed surveillance monitoring in violation of agency regulations and due process); Malta De Sa v. Mullin, No. 2:26-CV-00594-RFB-MDC, ECF No. 25 (D. Nev. May 19, 2026) (finding DHS and ICE unilaterally imposed burdensome release conditions on the petitioner in violation of the Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with the Court's conditional writ requiring a constitutionally adequate bond hearing and enforcing the Writ by ordering the petitioner's release); Bibiano v. Blanche, 2:26-CV-00927-RFB-BNW, ECF No. 19 (D. Nev. May 21, 2026) (after the government failed to provide notice of the petitioner's release despite ICE being given 24 hours to release him; petitioner could not be located after his release); Changyi v. Leyva, 2:26-CV-01280-RFB-MDC, ECF No. 21 (D. Nev. June 6, 2026) (petitioner was held in detention for an additional three days, despite having been granted bond and ordered immediately released by the immigration judge). This list is far from exhaustive.

[6] In related habeas matters where the Court has issued a conditional writ, providing Federal Respondents an opportunity to cure the petitioner's unlawful detention by providing a prompt constitutionally adequate bond hearing, DHS and the immigration courts have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026) (enforcing conditional writ after Federal

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward, in the event they seek Petitioner's re-detention pursuant to § 1226(a). Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). In the event DHS seeks Petitioner's re-detention under § 1226(a), Federal Respondents must provide him with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate under § 1226(a). See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with a district court's habeas order that the government provide an immigration detainee a bond hearing "under the Due Process Clause," which required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.") (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of the egregious violations of law and Petitioner's rights perpetrated by Federal Respondents to date.

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention **ON HIS OWN RECOGNIZANCE on June 29, 2026 between 12:00 p.m. and 3:00**

---

Respondents asserted 8 U.S.C. § 1226(c) did not apply to Petitioner in response to his habeas petition, and then denied Petitioner release on bond under § 1226(c) at the Court-ordered bond hearing; Cruz Perez v. Blanche, No. 2:26-CV-00315-RFB-DJA, Order Enforcing Writ, ECF No. 31 (D. Nev. May 15, 2026) (finding both DHS and the IJ openly defied the Court's requirement that the evidentiary burden be shifted to the government at the Court-ordered bond hearing, and that DHS' unilateral imposition of ankle monitoring defied agency regulations and the Court's order); Salazar-Lopez v. Mullin, No. 2:26-CV-00871-RFB-MDC, 2026 WL 1414066 (D. Nev. May 20, 2026) (finding the IJ failed to address the requirement that the evidentiary burden be borne by the government at the Court-ordered bond hearing); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with this Court's conditional writ, which required the government to bear the evidentiary burden at Petitioner's bond hearing).

**p.m.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **June 30, 2026,** confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order **(ECF No. 9) is DENIED without prejudice as moot**.

**The Clerk of Court is kindly instructed to:**

(1) Update the docket and case name to reflect the Respondents named in Petitioner's (ECF No. 8) First Amended Petition;

(2) Substitute David J. Venturella for Respondent Todd Lyons, pursuant to Federal Rule of Civil Procedure 25(d);

(3) enter judgment accordingly and close this case.

The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** June 26, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**